CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 10 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES WILLIAM FERGUSON, | ) | CASE NO. 7:14CV00380 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| GERALD A. MCPEAK, | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

James William Ferguson, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant jail superintendant failed to ensure that he received adequate treatment for his mental health conditions and his high blood pressure. After review of the parties' pleadings, the court finds that defendant is entitled to judgment as a matter of law.

## I. Background

Ferguson was booked into the New River Valley Regional Jail ("NRVRJ") on July 4, 2013 and was incarcerated there for more than a year.[1] In his amended complaint,[2] filed in August 2014, Ferguson sued the NRVRJ superintendant, Gerald A. McPeak. He alleged that during his incarceration at the NRVRJ, he filed requests to see a psychiatrist about medication, but was merely put on a waiting list for over a year. Ferguson stated that he wanted the psychiatrist to "help [his] bipolar disorder . . . to get the noise out of [his] head and relief [him] of some stress that [his] blood pressure might go down and [he] would not have such bad

---

[1] During this time, authorities transferred Ferguson, temporarily, to Virginia Peninsula Regional Jail ("VPRJ") for two brief periods—March 20-25, 2014, and April 29 to May 1, 2014.

[2] In his initial complaint, Ferguson alleged that he had been waiting for a year to see a doctor about his mental health problems and high blood pressure. The court notified him that his allegations did not state any actionable claim and granted him an opportunity to file an amended complaint, which he did.

headaches all the time." (Amend. Compl. Attach.1, ECF No. 8-1.) He alleged that even after the medical staff received "a list of the medications that work" for his blood pressure and mental health conditions, they chose to continue trying other medications that did not work for him. As relief in his lawsuit, Ferguson sought to be transferred to a Virginia Department of Corrections ("VDOC") facility where he can receive "proper" treatment and see a psychiatrist. He also sought monetary damages for his pain and suffering.

These are the facts, taken in the light most favorable to Ferguson. The New River Valley Community Services Board ("CSB") provides psychiatric services for inmates at NRVRJ, including emergency services, which are available at all times. A mental health clinician comes to the NRVRJ once per week to meet with inmates requesting non-emergency care and determines the need for psychiatric services and the priority of the need. CSB also provides group counseling for inmates, selects the inmate participants, and schedules the counseling sessions. Once per month, CSB sends a psychiatrist or a psychiatric nurse practitioner to NRVRJ to treat inmate patients, in the order determined by the mental health clinician, according to priority of need. Frederick Moses, M.D., a licensed medical doctor, provides medical services to inmates at NRVRJ, including prescription medications for mental health conditions and high blood pressure.

Medical intake forms dated July 4, 2013, indicate that Ferguson (who was intoxicated) denied any current prescription medications and did not mention or exhibit any mental health conditions. (ECF No. 26-1, at 8-9, 20.) On July 11, 2013, Ferguson signed a form, authorizing the release of his VPRJ medical records, including the list of medications prescribed there for depression and high blood pressure. (ECF No. 26-1, at 22.) Copies of these requested records are not included in the NRVRJ records, however. When Ferguson was briefly transferred back

2

to VPRJ, an NRVRJ medical transfer form dated March 17, 2014 indicates that he had no listed medications, mental health screenings, or mental health problems.[3] (ECF No. 26-1, at 24.)

In August 2013, Ferguson filed an inmate request for services form, asking to speak with a mental health clinician about getting his anti-depressant medications because he was "not sleeping well" and was "somewhat depressed." (ECF No. 4, at p. 9.) The responding official indicated that Ferguson was on the list for an appointment with mental health. Ferguson filed another request form on November 11, 2013, asking how much longer he would have to wait, and the response indicated he would be seen as soon as the schedule allowed.

A CSB mental health clinician evaluated Ferguson on December 26, 2013. The clinician noted Ferguson's reports of depression and difficulty sleeping and his stated desire to receive psychiatric medications as he had in the past, and referred him to see to the psychiatric nurse practitioner for a psychiatric evaluation. This referral was marked routine, rather than urgent. Ferguson filed a grievance on April 17, 2014, about his long wait to see someone about his mental health medications. A nurse responded, stating that Ferguson was on the list to see the nurse practitioner about his mental health issues. A CSB clinician also evaluated Ferguson again on April 28, 2014. The clinician noted Ferguson's report that his symptoms had worsened since the December evaluation and that he was frustrated about having to wait so long see the nurse practitioner about medications. The clinician noted no need for an emergency appointment, however, and referred Ferguson to a coping skills group.[4]

---

[3] Another medical intake form, dated May 1, 2014, when Ferguson returned from the second brief transfer to the VPRJ, appears to be merely a copy of the July 4, 2013 intake form, as it indicates that Ferguson was intoxicated.

[4] Ferguson states that he was never afforded an opportunity to attend such a counseling group.

3

At a sentencing hearing in state court on April 30, 2014, Ferguson's attorney questioned him in open court about his attempts to receive mental health treatment at the jail. (See Amend. Compl. Attach. ("Tr."), ECF No. 8-2.) Ferguson stated that he had been diagnosed with both depression and bipolar disorder, for which he had received medications in the past. He also stated that despite numerous requests for mental health treatment at the jail since his admission there in July 2013, he was still on a "waiting list" and had not received any mental health medication. (Tr. 11.) Although the defense attorney asked the state court judge to order that Ferguson receive mental health treatment at the jail, the record does not reflect that such an order was issued. The hearing was transcribed on May 30, 2014, and there is no indication that anyone at the jail received a copy of that transcript until the court served this civil action. The medical records reflect, however, that Dr. Moses prescribed Trazadone in July 2014, for treatment of Ferguson's depression.

According to Ferguson's jail medical records, on July 6, 2013, he refused blood pressure medication if he would be charged for it. (ECF No. 26-1, at 26.) A nurse noted on July 9, 2013, that Ferguson had changed his mind and wanted medication; the nurse then noted that a blood pressure check sheet had been started for him, and that he was prescribed Clonodine.[5] Records from May 2014 to September 2014 indicate that nurses frequently checked Ferguson's blood pressure and that the dosage of his medication (Clonodine or Lisinopril) was adjusted as needed, according to those checks.[6] At one point, Dr. Moses moved Ferguson to the medical unit for closer monitoring of his blood pressure. Dr. Moses also referred him to an outside cardiologist,

---

[5] The medical records provided do not include any nurse's notes between July 20, 2013 and May 2014.

[6] The nursing staff noted on several occasions in 2014 that Ferguson refused to take his blood pressure medication or refused a blood pressure check, although Ferguson refutes the accuracy of these documents.

4

who examined Ferguson in mid-August 2014, and made treatment recommendations.[7] On August 19, 2014, jail officials took Ferguson to the emergency room related to his high blood pressure, and the examining doctor recommended referral to a urologist, based on the inmate's difficulty with urination. Ferguson left the jail and entered the VDOC on September 24, 2014.

McPeak states that he is not personally licensed to provide medical or mental health services to jail inmates and is not personally involved in making decisions about any inmate's course of treatment. He first became aware of Ferguson's dissatisfaction about access to psychiatric services when he responded to a grievance on that subject on April 28, 2014. McPeak states that he did not see any indication from Dr. Moses' medical notes that Ferguson's mental health needs ever rose to the level of an emergency or that the doctor had diagnosed him with a serious psychiatric or medical need that went ignored. McPeak does not remember Ferguson lodging any complaint with him about blood pressure medication.

## II. Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

---

[7] The record does not appear to include a copy of the cardiologist's recommendations.

5

**A.**

As an initial matter, McPeak moves for dismissal of Ferguson's claims for injunctive relief as moot. In the complaint, Ferguson asked the court to order McPeak to transfer him to a VDOC facility. The record reflects, however, that Ferguson was transferred to the VDOC on September 24, 2014. A prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there. Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009). Therefore, the court will dismiss the claim for injunctive relief as moot.

**B.**

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). In his role as superintendant of the jail, McPeak is a person subject to suit under § 1983. Ferguson fails to demonstrate, however, any personal actions or omissions by McPeak which deprived Ferguson of constitutionally protected rights.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, a prohibition that extends to punishments other than those authorized by a criminal judgment.[8] De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

> To prevail on a claim of constitutionally inadequate medical care, a plaintiff must establish acts or omissions harmful enough to constitute deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). First, he must objectively show that the deprivation suffered or the injury

---

[8] It appears from Ferguson's pleadings that he was a convicted felon, rather than a pretrial detainee, during all times encompassed by his claims in this case. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992).

6

inflicted was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

Next, the prisoner must show that the defendant acted with deliberate indifference to his serious medical need. See Farmer, 511 U.S. at 834. Deliberate indifference can be established by showing that the medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837.

"[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient. Estelle, 429 U.S. at 105-06. Moreover, mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). Instead, officials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs. Estelle, 429 U.S. at 104-05; Young v. City of Mount Ranier, 238 F.3d 567, 576 (4th Cir. 2001).

Sharpe v. South Carolina Dept. of Corrections, No. 14-7582, __F. App'x__, 2015 WL 1500680, at *1 (4th Cir. Apr. 3, 2015) (reversing dismissal of inmate's claim that dentist failed to treat his painful wisdom tooth and delayed referring him to oral surgeon for its extraction).

Similarly, under the Eighth Amendment, a prisoner is entitled to necessary psychiatric treatment, reasonable in cost and time, if a physician or other health care provider, using ordinary skill and care at the time of observation, concludes with reasonable certainty that: (1) the prisoner's symptoms evidence a serious disease or injury; (2) such disease or injury is curable or may be substantially alleviated through psychiatric treatment; and (3) delay or denial of psychiatric treatment would pose a substantial risk of harm to the inmate. Bowring v. Godwin, 551 F.2d 44 (4th Cir. 1977). Plaintiff must show that the psychiatric treatment denied to him was a medical necessity, rather than merely what he, himself, found desirable. Id. at 48.

7

Supervisory officials may generally rely on the opinion of the medical staff as to the proper course of treatment and cannot be held vicariously liable for constitutional violations committed by the medical staff under their supervision. Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990) (overruled in part on other grounds by Farmer, 511 U.S. at 840). To prove a supervisory official's liability, plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with the medical staff's treatment decisions, or tacitly authorized or was indifferent to the medical staff's misconduct. Id. at 854. In certain circumstances, a supervisor may be liable for a constitutional deprivation that was caused by the exercise of a policy or custom for which he was responsible. See Fisher v. Wash. Metro. Area Transit Auth., 690 F.2d 1133, 1143 (4th Cir. 1982).

It is undisputed that as a jail inmate, Ferguson had access to care—to mental health assessment and appropriate treatment measures through the CSB, and to medical care through the jail's own medical staff and referrals to outside specialists as needed. With these health service providers in place, McPeak could generally rely on them to decide, according to their professional judgment, Ferguson's immediate needs for evaluation or treatment of medical or mental health conditions and to provide appropriate attention. Certainly, Ferguson fails to present any evidence that McPeak, through his own actions or through any jail policy, acted intentionally to delay or deny Ferguson the opportunity to speak with a mental health professional or medical staff about such concerns. Nor does Ferguson's evidence indicate that McPeak knew of any pattern of lengthy delays that jail inmates faced when seeking a consultation with the CSB nurse practitioner or medical staff.

Moreover, the record indicates that around the time McPeak saw Ferguson's mental health grievance in April 2014, the CSB clinician evaluated Ferguson again and found no

8

emergency need for further psychiatric evaluation. Within a few weeks, Dr. Moses also prescribed medication to treat Ferguson's complaint about his depression. The medical records indicate that, in April 2014 and thereafter until Ferguson's transfer to the VDOC, the jail's medical staff closely monitored his blood pressure and medication. From review of these records in response to Ferguson's complaints, McPeak would not have been on notice of any deprivation of care. As stated, McPeak cannot be held liable under § 1983 for deliberate indifference to serious medical or mental health needs of which he was never advised. See Odom v. South Carolina DOC, 349 F.3d 765, 770 (4th Cir. 2003) (finding that prison official is deliberately indifferent only if he knows of and disregards "an excessive risk to inmate health or safety"). Thus, the evidence simply does not present any disputed fact on which Ferguson could persuade a jury that McPeak knew of any serious mental health or medical need for which Ferguson was not receiving professional evaluation and treatment. Therefore, the court concludes that McPeak is entitled to judgment as a matter of law.

The evidence in this case may implicate actions or omissions by others at the jail or CSB and present some cause for concern.[9] Indeed, the court recognized this fact in reviewing

---

[9] It is undisputed that this inmate had been prescribed medications for mental health problems in the past. Yet, during more than a year at the jail, he waited five months to speak with a mental health clinician about these issues. Furthermore, the CSB clinician's December 2013 referral of Ferguson to the psychiatric nurse practitioner had no practical benefit to Ferguson whatsoever, as this promised appointment did not occur in the nearly ten months between that referral and his transfer to the VDOC.

Similarly disturbing to the court is the jail's medical record on Ferguson. Defendants have indicated that the inmate's complete medical record for his 2013-2014 incarceration at the jail was attached to the motion for summary judgment. Yet, these records reflect a gap of several months (July 2013 to May 2014), during which no one recorded checks of Ferguson's blood pressure or distributions of blood pressure medication to him, despite intake records indicating that he had a history of this condition. Ferguson disputes documents in the records indicating that he refused medication or blood pressure checks, and in any event, such occasional refusals do not excuse a months-long failure to record any attempts at providing prescribed treatment for this serious condition. The record simply offers no explanation for this information gap.

9

Ferguson's initial complaint and allowed him to amend his claims. In the order granting him leave to submit an amended complaint, the court advised:

> The amended complaint must include factual details in support of plaintiff's claims, including but not limited to the following types of information: his mental health problems, his medical problems, requests he has made for treatment of these issues, any medical or mental health appointments or treatment provided to him at the jail, any symptoms or injury plaintiff has suffered because of the alleged delays in treatment, and descriptions of conduct by superintendant (or other jail staff members), personally, in violation of plaintiff's constitutional rights. All individuals whom plaintiff wishes to sue must be included in the heading of the case as "defendants," and he must include in the complaint details about the conduct each defendant has undertaken in violation of his rights. All supporting facts must be included in the complaint itself; plaintiff cannot expect the defendant to review his attached grievances to guess the actions or events that he believes violated his rights.

(Order 2, ECF No. 7.) Ferguson's amended complaint continued to name Superintendant McPeak as the only defendant, however. Accordingly, the court has only adjudicated the asserted claims against this defendant, and inasmuch as Ferguson's submissions have stated no facts on which McPeak can be found liable under § 1983, he is entitled to judgment as a matter of law.

### III

For the reasons stated, the court concludes that the claim for injunctive relief must be dismissed as moot and the motion for summary judgment must be granted. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 7th day of August, 2015.

*/s/ Ju Conrad*
Chief United States District Judge